CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
for C'ville
MAR 29 2007
JOHN F. CORCORAN, CLERK
BY: Pau Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JANE DOE,<br><br>                                 *Plaintiff,*<br><br>v.<br><br>EDDIE EUGENE CUNNINGHAM<br>*and*<br>PAMUNKEY REGIONAL JAIL AUTHORITY,<br><br>                                 *Defendants.* | CASE NO. 3:06-CV-00019<br><br>OPINION AND ORDER<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant Pamunkey Regional Jail Authority's February 19, 2007 Motion Summary judgment. The Court finds that the facts and legal issues are clear from the briefs and that a hearing will not materially contributed to the decision-making process. The hearing scheduled for April 3, 2007 is therefore CANCELLED.

For the reasons below, the motion will be GRANTED.

## BACKGROUND

The facts of this case are not disputed. Plaintiff was on July 25, 2006, an inmate at the Pamunkey County Region Jail ("Jail"). Defendant Eddie Cunningham was an employee of the Defendant Pamunkey Regional Jail Authority ("PRJA"). On that morning, Defendant Cunningham was assigned to transport Plaintiff to the Fluvanna Women's Correctional Center. No other inmates or guards were in the car. During the trip, Cunningham stopped the car in a secluded location and raped the Plaintiff. Two days later, Plaintiff notified the authorities of the

rape. Cunningham has confessed and pleaded guilty to raping Plaintiff and at least one other female PRJA inmate.

Plaintiff's complaint alleged violations of her civil rights under color of law in violation of 42 U.S.C. § 1983 by both Cunningham and the PRJA. Defendant PRJA moved to dismiss, asserting that the Jail could not be held responsible for the criminal and tortious acts of its employee in the absence of a policy or custom endorsing his behavior. Plaintiff contends that the Jail's policy (or lack thereof) permitting male guards to be alone with female inmates during transport places the inmates at a high risk of sexual abuse. On September 28, 2006, (docket #22) this Court denied the motion to dismiss on the grounds that, while the transportation policy itself was not unconstitutional, it was possible that the Jail had an informal policy that tolerated rape which would trigger liability under § 1983. The parties were ordered to conduct discovery.

Defendant PRJA asserts by affidavit accompanying the instant motion that there have been a total of five incidents of sexual misconduct known to it: the two rapes perpetrated by Defendant Cunningham (for which he was fired and prosecuted), one proven consensual sexual encounter (which resulted in termination of the guard involved), one alleged consensual sexual encounter (the resolution of the investigation is not in evidence) and one kiss (which resulted in termination of the guard involved). Plaintiff does not offer counter-affidavits or other evidence of any additional sexual misconduct at the Jail, but points out that any sex between inmates and guards is rape under Virginia law, and further argues that these incidents put the Jail on notice that sex was an issue at the Jail.

## DISCUSSION

For the reasons given when the Motion to Dismiss was denied, the only question before the Court is whether Defendant PRJA had an informal policy of tolerating the rape of inmates.

The official policy, according to the jail's Superintendent, James Willett, is to forbid personal relationships of any kind between guards and inmates. Of the three incidents described by Willett, two resulted in the immediate termination of the guards involved, and 1 was under investigation when the guard attempted suicide. The misconduct of Defendant Cunningham also resulted in his termination and prosecution. There can be no question that the Jail does not tolerate sexual contact between guards and inmates.

Defendant PRJA asserts the incidents described by Willett did not involve deprivations of constitutional rights. While state law declares sex in prison to be rape *per se*, PRJA claims it is not possible to violate a prisoner's rights when the prisoner is a willing participant in the alleged violation, and cites *Freitas v. Ault*, 109 F.3d 1335, 1339 (8th Cir. 1997) (consensual relationship cannot be a deprivation of constitutional rights). The *Freitas* court's view has not been universally adopted, however. *See Carrigan v. Davis*, 70 F. Supp. 2d 448, 460 (D. Del. 1999) (any sex with inmates *per se* violation of Eighth Amendment). This Court is persuaded that the Eighth Circuit was correct when it found that welcome, voluntary attentions are not violations of a prisoner's rights, even when they are prohibited by state law. This reduces the number of rights-depriving incidents at the Jail from a maximum of five to two–both of which were allegedly committed by Defendant Cunningham.

The evidence shows that there is no custom or practice of violating inmate rights by permitting rape (either statutory or forcible) at the Jail. The official policy and actions taken in accordance with it are entirely acceptable and prudent. I have already held, on the Motion to Dismiss, the policy of transporting female inmates alone with male guards constitutional, if not necessarily wise, because it does not *cause* rapes, it *fails to prevent* them. This is inadequate to support liability. *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984). Even if

all of the incidents in evidence were taken as actionable under § 1983, three such incidents over the course of the past 10 years before Defendant Cunninham's alleged rapes are not so pervasive as to justify a finding that sex with inmates is an informal policy of the Jail. This is particularly true given that only the incidents involving Cunningham are actually actionable.

Defendant goes on to argue that the incidents in question put the Jail "on notice" that sex with inmates was an issue. It is likely–although no evidence to this effect was introduced–that the managers of the Jail were already well aware of the fact that men and women have the potential to become romantically and sexually involved. That is the most likely explanation for the policy requiring that all contacts between guards and inmates to relate to jail business. It is also a likely explanation for the firing of a guard caught merely kissing an inmate. These incidents were not required to put the Jail on notice, and even if they had that effect, the Jail's response was not to adopt an informal policy of permitting sex, but rather to punish it harshly.

When the stat deprives a person of her liberty, it undertakes an obligation to protect her from violence. Here, the state has failed in that duty. However, municipal liability under § 1983 is governed by *Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985) (finding that "considerable more" than a single incident was required to impose liability).

The Motion for Summary Judgement is GRANTED. Defendant Pamunkey Regional Jail Authority is DISMISSED from this action.

The Clerk of the Court is directed to send a certified copy of this Order to all counsel of record.

ENTERED: *[signature]*

U.S. District Judge

_March 29, 2007_
Date